UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MELISSA SHEFFIELD,

        Plaintiff,

v.

GOODYEAR TIRE & RUBBER COMPANY,

        Defendant.

CASE NO. C07-245RSM

ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter is now before the Court for consideration of plaintiff's motion for partial summary judgment, Dkt. # 7. The Court heard oral argument on October 4, 2007, and has fully considered the memoranda, exhibits, and arguments presented at the hearing. For the reasons set forth below, plaintiff's motion shall be GRANTED IN PART and DENIED IN PART.

FACTUAL BACKGROUND

Plaintiff Melissa Sheffield brings this action pursuant to the "COBRA"[1] amendments to the Employees' Retirement Income and Security Act ("ERISA"), alleging that defendants failed to notify her of her right to continuing health insurance following termination of her employment. She asks in this

---

[1] Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 *et seq.*

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 1

summary judgment motion for an order finding that (1) defendant violated COBRA, (2) she is entitled to a statutory penalty of $90 per day for that violation ($30 for each of the three plan participants), and (3) she is entitled to attorneys' fees.

The undisputed facts show that plaintiff began working for defendant Goodyear Tire & Rubbber Company ("Goodyear") as a retail salesclerk in 1994. In 2001, she enrolled herself and her two dependent children in the company's health plan. Plaintiff injured her back at work in January, 2003, and she took time off work to recover. She was placed on full-time medical leave in October, 2003. Pursuant to the employee benefit plan, she received 52 weeks of short-term disability ("STD") leave, from October 2003 to October 2004. During this time, Goodyear paid her health insurance premiums.

In October 2004, plaintiff's eligibility for short-term disability ended, and she was placed on long-term disability (LTD).[2] *See*, Declaration of McElroy, Exhibit 1. According to defendant, under the terms of the company health plan, plaintiff was required to pay her own insurance premiums while on LTD. As Goodyear explains in opposing plaintiff's motion, "[a]fter fifty-two weeks of STD, though, Plaintiff was required to pay her own medical premiums and she was so informed in a letter from Goodyear." Defendant's Opposition, p. 3, lines 17-18. However, it appears that Goodyear did not notify plaintiff of this requirement that she pay the premiums until a year later, October 7, 2005. *See*, Declaration of Melissa Sheffield, Exhibit A. Instead, as defendant admits, Goodyear mistakenly continued to pay plaintiff's premiums from October 2004 to October 2005.

After notifying plaintiff by letter in October 2005 that she needed to pay the insurance premiums, Goodyear sent plaintiff coupons with which she could pay her premiums monthly. According to plaintiff, she wrote in the month on each coupon, beginning with October, 2005, and sent them in. By March, 2006, she had sent in twelve payments, believing that she had pre-paid the premiums from October 2005 to October 2006. Declaration of Melissa Sheffield, ¶¶ 8-11. However, without advising

---

[2]Although both parties refer to the STD and LTD programs, plaintiff states that she did not receive any salary benefits under either plan; during her entire medical leave she received payments only from the state Workman's Compensation program. The benefit she received was continuation of group health insurance coverage for herself and her dependent children. Second Declaration of Melissa Sheffield, Dkt. # 14, p. 2.

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 2

plaintiff that it was doing so, Goodyear instead credited the payments toward the previous year's obligations (October 2004 through October 2005). Defendant argues that it did "notify Plaintiff, in writing, that she needed to make 'catch-up payments' for the 2004-2005 time period—and she did." Defendant's Opposition, p. 2, lines 10-11. However, Goodyear has not provided a copy of that notification. The October 2005 letter itself did not state that plaintiff's payments would be applied retroactively to previous obligations.

In April, 2006, plaintiff asked Goodyear for a copy of her personnel file, and she was told that she could not have it because she was no longer employed there. However, she had not received any notice from Goodyear that she had been terminated. According to an internal memo obtained by plaintiff during discovery, Goodyear "exited" plaintiff from employment on May 13, 2006, with an effective date of October 10, 2005. Declaration of Daniel Johnson, Exhibit 1. Plaintiff learned of the termination of her health insurance benefits in June, 2006, when she tried to fill a prescription and was informed by the pharmacist that her medical insurance had been cancelled. She contacted Goodyear and was informed that her medical insurance had been cancelled effective October 2005. Declaration of Melissa Sheffield, ¶ 13. Her attorney contacted Goodyear to request that plaintiff's health benefits be restored. Counsel pointed out to Goodyear that they had not provided her with the mandatory COBRA notice, advising plaintiff of her right to continuation of coverage after termination. Johnson Declaration, Exhibit 4.

After several e-mail exchanges between opposing counsel, Goodyear offered to extend to plaintiff an opportunity to "buy health insurance coverage through October 9, 2006", provided that she paid the premiums for the period from October 10, 2005 through October 9, 2006. Johnson Declaration, Exhibit 7. Plaintiff's counsel construed this offer as demanding that she double pay ("if Plaintiff wanted her benefits reinstated for the remainder of 2006, she would have to pay the past and future premiums <u>again</u>." Motion for Partial Summary Judgment, p. 4, lines 7-8 (emphasis in original). Plaintiff declines to recognize that the premiums she paid with her coupons were actually credited to her October 2004 to October 2005 payment obligations. She thus argues that defendant " 'offered' Plaintiff less than <u>three</u> additional months of health insurance coverage (from July 12 to October 9, 2006) on the condition that

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 3

she pay <u>twelve</u> months of premiums for it. . . ." Plaintiff's Reply, p. 7, lines 1-3 (emphasis in original).

It is Goodyear's position that the premium payments made by plaintiff were necessarily (and retroactively) credited to her 2004-05 obligations pursuant to the company's written benefit plan. According to defendant, that plan provides that during the first year of approved leave due to disability, while the employee is still on the payroll and on STD, the company pays the health insurance premiums. After 52 weeks of STD, the employee is placed on LTD. Although she is still an employee for another year, and may be receiving LTD benefits, the health insurance premiums must be paid by the employee in advance. However, Goodyear has produced no copy of the employee manual or insurance plan language that actually states this, nor has it produced a copy of the written notification to plaintiff, referenced above, in which defendant claims to have advised her of the need to make "catch up" payments for 2004-2005. All that defendant has offered in support of its opposition is a single page from the employee benefits manual, explaining the timing of short-term and long-term disability benefits. McElroy Declaration, Exhibit 1. While this page explains STD and LTD benefit periods, it is silent on the matter of payment of premiums.

Defendant admits that, regardless of the company policy, it mistakenly failed to advise plaintiff in 2004, when she went on LTD, that she must pay the premiums for the year from October 2004 to October 2005. Defendant also admits that the company mistakenly continued to pay the premiums for plaintiff for that year, before retroactively crediting her coupon payments to that period. It appears that this mistake also led to the failure to provide plaintiff with a COBRA notice. The alleged COBRA violation is the basis of plaintiff's complaint, as well as for this motion for partial summary judgment.

## DISCUSSION

Under COBRA, continuation of coverage under an employer's group health plan is available for up to eighteen months to qualified beneficiaries, which includes employees and their dependents. 29 U.S.C. § 1162(2)(A), 1167(3). Upon termination of employment, or other "qualifying" event, the employer must notify the plan administrator of the qualifying event within thirty days; the administrator then has fourteen days after receiving notice to notify the qualified beneficiaries of their right to receive

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 4

continuation coverage. 29 U.S.C. § 1166. Plaintiff asserts that here the employer is also the plan administrator, so notice must be provided to the employee within forty-four days of termination. 29 U.S.C. § 1166(a). Defendant does not dispute this calculation of the time limit.

Where the required notice is not timely given, an employee may bring a civil action against the employer for violation of the COBRA notice requirements, and may recover benefits due, penalties of up to $110[3] per day, and other equitable relief the Court deems proper. 29 U.S.C. § 1132(a), (c). Plaintiff has moved for summary judgment as to this notice requirement and the statutory penalties.

In opposition to the motion, defendant asserts that there is a factual dispute to prevent summary judgment on the COBRA violation. Defendant contends that it actually did send a COBRA notice to plaintiff. However, that notice, sent April 27, 2004, was in reference to plaintiff's daughter, and the daughter's eligibility for continuation of benefits past her 19th birthday. McElroy Declaration, Exhibit 2. Defendant argues that this notice "demonstrate[s] that Plaintiff's allegation of Goodyear's complete failure to provide notice regarding continuation of health care benefits is either false, or at least in material dispute." Defendant's Opposition, p. 8, lines 11-13. This assertion is without merit. The April 27, 2004 COBRA notice was clearly in regard to the daughter's birthday, not plaintiff's termination, which did not occur until October, 2005, more than a year later. There is no basis for "bootstrapping" this notice into the notice that was statutorily required to be given upon the qualifying event of plaintiff's termination. As to plaintiff's termination, there can be dispute about the fact that no COBRA notice was provided.

Defendant also contends that under the "good faith" standard adopted by the courts for determining COBRA compliance, " 'notice to a covered employee **may** constitute sufficient notice to all other beneficiaries of the plan living at the same address.' " Defendant's Opposition, p. 8, lines 14-17, *quoting Conery et al. v. Bath Associates*, 803 F. Supp. 1388, 1399 (N.D. Ind.. 1992) (emphasis added). However, the rule is discretionary, and there is no basis for the Court to apply it here. The April 27,

---

[3] The maximum civil penalty was increased from $100 per day to $110 per day. 29 C.F.R. § 2575.502c-1. In her motion, plaintiff states that she is seeking "at least $90 per day." This represents $30 per day per plan participant.

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 5

2004 notice regarding a different covered event, her daughter's nineteenth birthday, was wholly insufficient to constitute notice to plaintiff regarding her termination eighteen months later. Further, plaintiff was not even notified of her October 10, 2005 termination until almost nine months after the event. Thus she was not given timely notice of her termination, nor of her rights under COBRA.

The "good faith" standard articulated by courts in this circuit is that "a good faith attempt to comply with a reasonable interpretation of the statute is sufficient", but "notice given must be sufficient to allow the qualified beneficiary to make an informed decision whether to elect coverage." *Larson v. Roche Laboratories*, 2006 WL 2668984 (slip copy) (D.Ariz. 2006); *quoting Smith v. Rogers Galvanizing Co.*, 128 F. 3d 1380, 1383 (10th Cir. 1997) (collecting cases) and *McDowell v. Krawchison*, 125 F. 3d 954, 958 (6th Cir. 1997). Defendants contend that the July 12, 2006 letter from Goodyear to plaintiff's counsel, offering to "extend her health benefits" for a mere three months, to October 9, 2006, should be construed as such good faith attempt. However, the Court cannot construe the offer to extend her health benefits for three months as a good faith attempt. The letter was untimely in relation to plaintiff's termination date, did not offer her the same opportunity she would have had were she timely informed of her termination from employment,[4] and was not sufficient to allow her to make an informed choice. Even if the Court did not consider the demand that she pay $1781.52 to make up the past year's missed premium payments unreasonable, the manner in which it was presented, together with the limited extension of benefit period (only three months), did not offer plaintiff information from which she could make an informed choice. Further, the letter incorrectly stated, with respect to her initial placement on disability leave in October 2003, that plaintiff's COBRA period "began to run at the same time". Johnson Declaration, Exhibit 7. It is not clear whether "the same time" refers to October 2003, when she went on STD, or October 2004, when she went on LTD. In either case, it is an incorrect statement of the law, because placement on disability is not a "qualifying event" to trigger the COBRA continuation of coverage requirement. 29 U.S.C. § 1163 (listing only death, termination, divorce or legal separation,

---

[4] Pursuant to 29 U.S.C. § 1162(20(A)(i), the maximum required period of coverage following termination is eighteen months. Thus, plaintiff was entitled to COBRA coverage for eighteen months after her October 9, 2005 termination, until April 9, 2007.

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 6

entitlement to Medicare benefits, attainment of non-dependent age (for a dependent child of the employee), and bankruptcy of the employer as qualifying events).

Therefore, based on the record before the Court at this time, the Court shall GRANT plaintiff's motion for partial summary judgment as to the COBRA violation.  There is no genuine issue of fact about the COBRA notice–it was not given. The opportunity that was offered later, in July 2006, was untimely with respect to her termination, and did not constitute notice that was "sufficient to allow the qualified beneficiary to make an informed decision whether to elect coverage." *Smith v. Rogers Galvanizing Co.*, 128 F. 3d at 1383. It does not constitute a good faith attempt to provide timely notice.

As to plaintiff's request for summary judgment on the matter of a statutory penalty under 29 U.S.C. § 1132(c), the motion shall be DENIED at this time. While a statutory penalty is appropriate, determination of the amount shall await further proceedings, during which the Court shall apply the considerations set forth below.

The Court has wide discretion in fixing the amount of the statutory penalty for COBRA violations. *Boyadijan v. CIGNA Companies*, 973 F. Supp. 500, 505 (D.N.J. 1997). In deciding whether to assess a penalty under § 1132(c), the courts have considered such factors as "bad faith or intentional conduct on the part of the administrator, the length of the delay, . . . and the existence of any prejudice to the participant or beneficiary." *Pagovich v. Moskowitz*, 865 F. Supp. 130, 137 (S.D.N.Y. 1994) (citations omitted).  However, it is not necessary that it be determined that the employer acted in bad faith, nor that the plaintiff was actually damaged by the violation. *Chenowith v. Wal-Mart Stores, Inc.,* 159 F. Supp. 2d 1032, 1042 (S.D. Ohio 2001); *Disabatino v. Disabatino Brothers, Inc.*, 894 F. Supp 810, 816 (D. Del. 1995). The purpose of the COBRA statute is to ensure that there are no gaps in health coverage, and the penalty provision is intended to enforce compliance upon employers and plan administrators. *Id*.

Nevertheless, the amount should bear some relation to plaintiff's actual damages. The remedies under COBRA are designed to make the plaintiff whole, not to leave her in a better position than she would have been had the employer not violated COBRA. *Disabatino*, 894 F. Supp. at 815.

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 7

Accordingly, plaintiff's motion for partial summary judgment (Dkt. # 7) is GRANTED IN PART and DENIED IN PART as set forth above. The Court shall defer ruling on plaintiff's request for attorneys' fees.

Dated this 8th day of November, 2007.

/s/ Ricardo S. Martinez
RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT - 8